UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FILED
SCRANTON

OCT 22 2012

PER _____
DEPUTY CLERK

| | | |
|---|---|---|
| ERNESTO ARELLANES-SANTIAGO, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL NO. 3:CV-11-1171 |
| | : | |
| MR. BROWN, et al., | : | (Judge Kosik) |
| | : | |
| Defendants | : | |

## MEMORANDUM

Ernesto Arellanes-Santiago filed this Bivens[1]-styled civil rights action pursuant to 28 U.S.C. § 1331 in the United States District Court for the District of Colorado on November 10, 2010. While pending there, said court directed the filing of an amended complaint. In his amended complaint, Santiago alleges claims of inadequate medical care following a stabbing that occurred on March 12, 2009, while confined at the United States Penitentiary at Coleman, Florida. (Doc. 23.) Named as Defendants in the amended complaint are the following: Mr. Brown, Health Services Administrator at the United States Penitentiary at Lewisburg, Pennsylvania ("USP-Lewisburg"); Francis Fasciana, a physician assistant employed at USP-Lewisburg;

---

[1] See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

and Jocelyn Celestin, a physician assistant employed at USP-Coleman. Following service of the amended complaint by the Colorado District Court, Defendants Brown and Fasciana filed an unopposed motion to change the venue of this action. The motion was granted, and the case was transferred here on June 21, 2011. (Doc. 46.) On October 7 2011, this court transferred that part of the action raising claims against Defendant Celestin to the United States District Court for the Middle District of Florida. (Doc. 58.) Only the claims against Brown and Fasciana proceed in this court. Brown and Fasciana filed an answer to the amended complaint on April 5, 2012. (Doc. 63.) Presently pending is Defendants' motion for summary judgment. (Doc. 65.) For the reasons that follow, the motion will be deemed unopposed and granted.

I. **Background**

Santiago alleges that he received inadequate medical care in violation of the Eighth Amendment following his stabbing on March 12, 2009, while confined at USP-Coleman. He states that after the stabbing, he was airlifted to an outside trauma unit for care. When he returned to USP-Coleman, he was under Celestin's care and claims that Celestin only visited him and charted that he was doing well, all contrary to what Santiago was telling her. Specifically, Santiago voiced complaints of pain and complications.

Santiago claims that he was later transferred to USP-Lewisburg where he was

2

placed under the care of Defendant Fasciana. Although Fasciana was aware of Santiago's distress, pain and need for treatment, it is alleged that he only conducted examinations of Santiago and failed to provide treatment. Santiago also claims that he informed Defendant Brown of the lack of treatment, but that Brown, as the one who oversees the health service operations at USP-Lewisburg, failed to assist him. Santiago requests injunctive relief in the form of surgery, as well as monetary damages for the lack of medical care.

Following the venue transfer of this case to the instant court, a Standing Practice Order was issued advising Plaintiff of his briefing and other litigation responsibilities as a pro se plaintiff. (Doc. 47.) Specifically, Plaintiff was advised of Middle District of Pennsylvania Local Rule 7.6, and the need to file a brief in opposition to a moving party's motion and the fact that he may be deemed not to oppose a motion if he failed to file an opposing brief. The Standing Practice Order specifically addresses motions for summary judgment filed under Fed. R. Civ. P. 56 and the filing requirements of the parties. Rule 56(e) provides that a party opposing a motion for summary judgment must file evidentiary material (affidavits or other evidence), as described in Rule 56, setting forth specific facts that there is a genuine issue for trial. In addition, Local Rule 56.1 requires a party opposing a summary judgment motion to file a separate concise statement of material facts responding to the numbered paragraphs of the statement of facts required to be filed by the moving party. It is further required that

the statements of fact by both parties include a reference to that part of the record that supports each statement. (See Doc. 47 at 2-3.)

In the instant case, Defendants Brown and Fasciana have filed a summary judgment motion properly supported by a statement of material facts, brief and evidentiary materials. Plaintiff has failed to oppose the motion. In fact, the court has not had any contact from Plaintiff since October 25, 2011. In said filing, Santiago stated that he was going to be deported to Mexico and supplied the court with an address in Virginia to send his mailings. (Doc. 60.) It appears to be the address of his sister.

When Defendants later filed their motion for summary judgment and supporting materials, these documents were mailed to Plaintiff at the address provided, and were not returned to Defendants. Further, all documents sent from the court since Plaintiff's October 25, 2011 filing have also been sent to the Virginia address. None of these mailings have been returned to the court as undelivered. In addition, in searching Plaintiff's name via the Inmate Locator on the Bureau of Prisons website located at www.bop.gov, it reveals that Santiago was released from prison on October 14, 2011. How long Plaintiff remained at the Virginia address provided and whether/when he may have been removed to Mexico is unknown. He has never provided any further mailing address to the court. For these reasons, the court will deem the pending motion for summary judgment to be unopposed, and will address

the motion on the merits. All material facts set forth in Defendants' statement of facts will be deemed to be admitted in accordance with M. D. Local Rule 56. 1.

The undisputed facts are as follows. Santiago was incarcerated at USP-Lewisburg from June 29, 2009 to June 30, 2010, at which time he was transferred to another institution. (Doc. 67, SMF ¶2.) He was returned to USP-Lewisburg on April 4, 2011, where he remained until October 14, 2011, when he was released from BOP custody. (Id. ¶¶ 3-4; Ex. 6, BOP Inmate Locator.) Defendant Brown is employed by the BOP as a Health Services Administrator ("HSA") assigned to USP-Lewisburg. (Id., SMF ¶ 5, Ex. 2, Brown Decl. ¶ 1.) Defendant Fasciana is employed by the BOP as a Physician Assistant assigned to USP-Lewisburg. (Id., SMF ¶ 6.)

Santiago's medical records reveal that he was injured while confined at USP-Coleman on March 12, 2009, during the course of an altercation. (Id., SMF ¶ 7, Doc. 68, Ex. 1, Romano Decl. ¶ 3.) He was immediately transported to the Orlando Regional Medical Center in Orlando, Florida ("ORMC") following the injury. (Doc. 68, Ex. 4, BOP Medical Records.) While on the way to the hospital, paramedics noted five (5) stab wounds on Santiago: one in the chest, two in the back, one in his left side and the fifth in the back of his right leg. (Doc. 67, SMF ¶9, Doc. 68, Ex. 4.) Upon arrival at ORMC, examination revealed that Santiago had air and blood in his chest and abdomen, collapsed lungs, respiratory failure, injuries to his diaphragm and lacerations to his liver, stomach and lungs. (Doc. 68, Ex. 4 at 173.) Following a

5

prolonged course of surgery, the doctors at ORMC were able to repair the injuries and Santiago was ultimately discharged back into the care of USP-Coleman on April 4, 2009. (Doc. 67, SMF ¶¶ 11, 12.)

On June 23, 2009, Santiago left USP-Coleman to be transferred to USP-Lewisburg. He remained there until June 30, 2010, when he was transferred to another institution. (Id., SMF ¶ 13; Ex. 1, Romano Decl. ¶ 3.) Upon arrival at USP-Lewisburg, an intake screening was performed by the medical department and it was noted that Santiago had no pain. (Id., Ex. 1 ¶ 4, Attach. D, Intake Screening form.) He was examined on July 27, 2009, as a followup to his March 2009 surgeries that had been conducted at ORMC. (Id., ¶ 5.) He was diagnosed by a non-BOP physician with a ventral hernia, most likely a side-effect of his earlier surgeries. (Id.) Non-surgical intervention was recommended by this physician.

On August 6, 2009, Physician Assistant Peoria noted that Santiago complained of pain around the umbilicus area. (Id. ¶ 6; Attach. F.) Santiago was told to continue exercises to strengthen his abdominal muscles. He was seen again on October 28, 2009 by Peoria. (Id. ¶ 7, Attach. G.) It was noted that Santiago's ventral hernia was still present, and Peoria requested that surgery be scheduled to repair the hernia. (Id.)

In a January 27, 2010 Consultation Request, it was noted that Dr. Mucciolo, a contract physician, recommended scheduling laparoscopic surgical repair of the hernia. (Id. ¶ 8; Attach. H, Consultation Request.) On the same day, Physician

6

Assistant Navarro made an administrative request to schedule Santiago's surgery. (Id. ¶ 9; Attach. I.) Dr. Pigos, Clinical Director at USP-Lewisburg, cosigned the request on February 3, 2010. (Id.) The surgery was listed as a priority 4 or "routine" priority level by Pigos. (Id.; Ex. 3, Wyant Decl.)

After a staff medical provider recommends that an inmate be seen by an outside medical provider, the Utilization Review Committee ("URC") meets to discuss the need for the appointment with an outside care provider. (Doc. 68, Ex. 2, Brown Decl. ¶3.) A URC meeting was held on February 4, 2010, and the surgery for Santiago was approved. (Id., ¶ 5; Attach. A, Memorandum.) The staff who participate in a URC meeting varies, but generally includes the Clinical Director, the Health Information Technician (who schedules appointments), the HSA or Assistant HSA, a physician assistant, a nurse and an Associate Warden. (Id. ¶ 3.) The non-medical staff are present to discuss administrative and/or security issues, but do not provide input into the clinical decisions of the case. (Id. ¶ 4.) As the HSA, Brown's input is limited to administrative-related concerns, such as costs, security, and other non-clinical input; he does not provide clinical care or make any decisions regarding clinical care. (Id. ¶¶ 2, 4; Ex. 5.)

Lisa Wyant, Medical Records Technician, participates in the URC meetings and afterward schedules inmates for appointments with outside health care providers. (Doc. 68, Ex. 3, Wyant Decl. ¶ 2.) After the URC meetings, she coordinates with local

physicians with whom the BOP has a contract for services. (Id.) Appointments are made based upon priority level and the contract physician's schedule. Priority is assigned based upon a scale of 1 (most urgent) to 4. (Id. ¶ 3.) Santiago's surgery by Pigos was assigned a priority 4 level, the lowest priority level indicating that a procedure needs to be done, but does not have any immediacy. According to the BOP medical records, Santiago's surgery was scheduled at the soonest available date with the surgeon, which was August 13, 2010. (Id. ¶ 4; Attach. B at 2.) The surgery was ultimately cancelled when Santiago was transferred out of USP-Lewisburg on June 30, 2010. (Id. ¶ 5.)

Santiago was later transferred back to USP-Lewisburg on April 4, 2011. (Doc. 68, Ex. 1, Romano Decl. ¶¶ 3, 11; Attach. C.) On April 6, 2011, he was provided with an abdominal binder for his hernia. (Id. ¶ 12; Attach. K.) On April 13, 2011, Physician Assistant Hemphill examined Santiago and treated him for complaints of abdominal pain. He provided him with a Ktorolac injection and a thirty (30) day prescription for Magnesium Hydroxide. (Id.; Attach J.) On April 26, 2011, Santiago was treated for complaints of constipation. (Id. ¶ 13; Attach. L.) No complaints related to his hernia or of abdominal pain were noted. (Id.) On May 4, 2011, Santiago requested reading glasses, and an optometry consult was ordered. (Id. ¶ 14; Attach. M.) He was thereafter seen by an optometrist on June 2, 2011. (Id. ¶ 15; Attach. N.)

On July 11, 2011, Santiago's hernia surgery was scheduled. (Id. ¶ 16; Attach.

O.) The surgery to repair his ventral incisional hernia took place on August 4, 2011 at the Evangelical Community Hospital. (Doc. 68, Ex. 7 at 1-2.) Santiago was released from BOP custody on October 14, 2011. (Id., Ex. 6.) Santiago's BOP medical records from March 12, 2009 until July 18, 2011 fail to reveal any clinical encounters between Santiago and Physician Assistant Fasciana. (Id., Ex. 4.)

## II. Motion for Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[2] A fact is "material" if it will "affect the outcome of the suit under the governing law ...." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. at 250.

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence. All reasonable inferences are also to be resolved in favor

---

[2] Amendments to the Federal Rules of Civil Procedure became effective on December 1, 2010. The oft-cited summary judgment standard is now located in Rule 56(a) rather than Rule 56(c). Although the wording of the standard has changed slightly, replacing the word "issue" with "dispute" ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact"), this change does not affect the substantive standard or the applicability of prior decisions construing the standard. Fed. R. Civ. P. 56(a) advisory committee's note (emphasis added).

9

of the moving party. Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n. 2 (3d Cir. 1983). However, "a mere scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 249. In the face of such evidence, summary judgment is still appropriate "where the record ... could not lead a rational trier of fact to find for the nonmoving party ...." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a fair-minded jury could reasonably decide.'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989)(quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant "must point to concrete evidence in the record" in that mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).

## III. Discussion

The only two Defendants in this action are Health Services Administrator Brown and Physician Assistant Fasciana, both employees at USP-Lewisburg. Santiago alleges that these individuals were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment in that they failed to repair his ventrial hernia.

A <u>Bivens</u>-type action is the federal counterpart to an action filed under 42 U.S.C. § 1983. See <u>Paton v. LaPrade</u>, 524 F.2d 82 (3d Cir. 1975); <u>Farmer v. Carlson</u>, 685 F.Supp. 1335, 1338 (M.D. Pa. 1988). In order to prevail on a claim made under § 1983, the plaintiff must satisfy two criteria: (1) that some person has deprived him or her of a federal right, and (2) that the person who caused the deprivation acted under color of state or territorial law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

Moreover, claims brought under § 1983 cannot be premised on a theory of respondent superior. <u>Rode v. Dellaraciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named Defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077 (3dCir. 1976). As explained in <u>Rode</u>:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.

11

> Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

An application of the above standards to the undisputed facts reveals that neither Defendant Fasciana nor Defendant Brown were personally involved in treating Santiago or in the scheduling of his surgery. The undisputed record reveals that HSA Brown does not provide medical treatment to inmates. He also does not provide input with respect to decisions regarding the clinical care of inmates. The priority level of surgery is determined by Dr. Pigos, the Clinical Director. Defendant Brown's involvement in the URC meetings is administrative only. Furthermore, the URC, with Brown in attendance, approved Santiago's surgery. As such, the undisputed facts reveal that Brown had no personal involvement in Santiago's allegations of the denial or the delay of surgery.

In addition, to the extent Santiago attempts to name Brown based solely on his position as the Health Services Administrator at USP-Lewisburg, he fares no better. It is well-established that the doctrine of <u>respondent superior</u> cannot form the basis of a <u>Bivens</u> claim. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009). Further, it is well established that even if Brown failed to act upon Santiago's complaint that the medical staff was not rendering proper care, nonmedical defendants cannot be found liable for failing to respond to a prisoner's medical complaints when said prisoner is being

12

treated by medical staff. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). The undisputed record demonstrates that Santiago was being treated for his medical conditions by the medical staff at USP-Lewisburg during his incarceration there and, as such, as a nonmedical administrator Brown cannot be found liable.

The undisputed record also establishes that Defendant Fasciana was not personally involved in the medical care of Santiago. Although Fasciana is a member of the medical staff at USP-Lewisburg, the record fails to reveal any clinical encounters between Santiago and Fasciana. Fasciana cannot be found liable for inadequate medical care with respect to Santiago if he was never involved in his care and treatment.[3] For these reasons, it is clear that summary judgment is warranted in favor of Defendants. An appropriate order follows.

---

[3] To establish liability under the Eighth Amendment based on allegations of the denial of proper medical care, an inmate must show "deliberate indifference to serious medical needs" on the part of the defendant. Estelle v. Gamble, 429 U.S. 97, 104 (1976).

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ERNESTO ARELLANES-SANTIAGO, :
:
Plaintiff :
:
v. : CIVIL NO. 3:CV-11-1171
:
MR. BROWN, et al., : (Judge Kosik)
:
Defendants :

# ORDER

AND NOW, this 22nd day of **OCTOBER, 2012**, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. Defendants' motion for summary judgment (Doc. 65) is **deemed unopposed and is granted**. Summary judgment is granted in favor of Defendants Brown and Fasciana on all claims. The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff.

2. The Clerk of Court is directed to **close this case**.

3. Any appeal from this order is deemed frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

EDWIN M. KOSIK
United States District Judge